IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) | CIVIL NO. 07-00156 SOM/LEK |
| Plaintiff, | ) ) | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) | |
| MICHAEL J. CHUN, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

Plaintiff State Farm Fire and Casualty Company ("State Farm") seeks a declaration that it owes no duty under a homeowner's insurance policy and an umbrella insurance policy issued to Defendant Michael J. Chun ("Chun") with respect to a lawsuit against Chun in Hawaii state court ("the state court action"). In the state court action, Kinsley "Ikaika" Shelton ("Shelton"), Ernest Vidinha, III ("Vidinha"), and their parents sued Chun and others for dismissing Shelton and Vidinha from Kamehameha Schools. State Farm is currently defending Chun in the state court action.[1]

Before the court is State Farm's motion for summary judgment. State Farm argues that the claims against Chun in the

---

[1] In the state court action, Chun is sued in his official and individual capacities. Chun says he has separate counsel for claims asserted against him in his official and individual capacities. Opp. at 21.

state court action are not covered by the Policies because the
claims fail to allege that an "occurrence" or "loss" caused
"bodily injury" or "property damage," as defined in the Policies.
Alternatively, State Farm argues that the Policies exclude
coverage for injuries caused by Chun's business pursuits or
professional services.  The court agrees with State Farm that the
claims against Chun in the state court action are not covered
under the Policies.  The court therefore grants State Farm's
motion for summary judgment.[2]

II.      LEGAL STANDARD.

         Summary judgment shall be granted when

              the pleadings, depositions, answers to
              interrogatories, and admissions on file,
              together with the affidavits, if any, show
              that there is no genuine issue as to any
              material fact and that the moving party is
              entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr.,
383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc.,
198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal
purposes of summary judgment is to identify and dispose of
factually unsupported claims and defenses.  Celotex Corp. v.
Catrett, 477 U.S. 317, 323-24 (1986).

         Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential

---

         [2] The court, in its discretion, rules on the present motion
without a hearing.  See LR 7.2(d).

element at trial.  See id. at 323.  A moving party without the
ultimate burden of persuasion at trial--usually, but not always,
the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).  The burden initially falls upon the moving
party to identify for the court "those portions of the materials
on file that it believes demonstrate the absence of any genuine
issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing
Celotex Corp., 477 U.S. at 323).

        "When the moving party has carried its burden under
Rule 56(c), its opponent must do more than simply show that there
is some metaphysical doubt as to the material facts."  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)
(footnote omitted).  The nonmoving party may not rely on the mere
allegations in the pleadings and instead "must set forth specific
facts showing that there is a genuine issue for trial."  Porter,
383 F.3d at 1024 (quoting Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 256 (1986)).  "[I]f the factual context makes the
non-moving party's claim implausible, that party must come
forward with more persuasive evidence than would otherwise be
necessary to show that there is a genuine issue for trial."  Cal.
Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d

1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co.,
475 U.S. at 587).

III.      BACKGROUND.

          Chun is the president and headmaster of the Kamehameha
Schools in Honolulu, Hawaii ("Kamehameha Schools").  State Court
First Amended Complaint[3] ¶ 11.

          In November 2004, the Kamehameha Schools boys' varsity
volleyball team, including Shelton and Vidinha, traveled to Hilo,
Hawaii to participate in the state championship tournament.  Id.
¶ 16.  Shelton and Vidinha were seniors in high school at the
time.  Id. ¶ 5.  Kamehameha Schools alumni accompanied the team
to Hilo, acting as volunteer assistant coaches and chaperones and
slept in a hotel room that the school rented for the team.  Id.
¶ 17.

          On November 14, 2004, after the state championship
game, Pono Maa ("Maa"), the team coach, "informed the team that
they could celebrate with no curfew or restrictions on their
behavior."  Id. ¶ 18.  Several members of the volleyball team saw

_____

          [3] The parties submit different versions of the Complaint
filed in the state court action.  State Farm attaches to its
motion the Original Complaint filed in the state court action on
October 31, 2006.  See Ex. C (attached to Motion).  Chun attaches
to its opposition the First Amended Complaint filed in the state
court action on November 6, 2006.  See Ex. A (attached to Opp.).
Because the First Amended Complaint represents the current claims
in the state court action, the court looks to that Complaint for
the underlying allegations and claims and refers to it as the
"State Court Complaint" throughout this order.

Maa and the volunteer assistant coaches consuming alcohol in the coaches' hotel rooms.  Id. ¶ 19.  Four members of the team, including Shelton and Vidinha, eventually "consumed alcohol with the volunteer assistant coaches in the volunteer assistant coaches' hotel room and a nearby park."  Id. ¶ 20.  According to Shelton and Vidinha, the volunteer assistant coaches provided the alcohol for the students.  Id.

On November 17, 2004, in response to allegations of alcohol consumption in Hilo, Maa met with team members who had consumed alcohol and their parents.  Id. ¶ 21.  Maa told them that "he would take responsibility for the incident and so inform his supervisor."  Id.

After the November 17, 2004, meeting, the vice principal of Kamehameha Schools and others conducted a "disciplinary hearing" for Shelton and Vidinha and placed them on administrative leave.  Id. ¶¶ 13, 22.  On November 26, 2004, the principal and vice principal told Shelton and Vidinha that they were "summarily expelled" for having committed "a zero-tolerance infraction."  Id. ¶ 23.  The two other team members who had consumed alcohol were disciplined, but not expelled.  Id. ¶ 24.

Shelton, Vidinha, and their parents appealed the dismissal to Chun.  Id. ¶ 25.  Chun denied the appeals "under Kamehameha Schools' 'zero tolerance' policy and stated that the central issue on appeal was 'whether or not these non-players

were indeed volunteer coaches or alumni who came to support the
team.'"   Id. ¶ 26.

Shelton completed his high school education at Campbell
High School.   Id. ¶ 27.   He thereafter applied to Kamehameha
Schools for a college scholarship, but the school "denied him the
Ke Ali`I Pauahi collegiate scholarship due to the subject
incident, claiming that it adversely reflected upon his moral
character."   Id.

On October 31, 2006, Shelton, Vidinha, and their
parents ("Underlying Plaintiffs") sued Kamehameha Schools, Chun,
Maa, and the principal and vice principal of the school
("Underlying Defendants") and filed a First Amended Complaint on
November 6, 2006.   See Ex. C (attached to Motion) at 1; Ex. A
(attached to Opp.) at 1.   Chun, Maa, the principal, and the vice
principal are sued in their individual and official capacities.
State Court Complaint ¶¶ 11-14.

The State Court Complaint asserts that Underlying
Defendants:  (1) breached their duties "to nurture and support
[Shelton and Vidinha] and to treat them fairly and/or reasonably
in accordance with certain core values"; (2) "negligently and/or
recklessly interfered with [Shelton's and Vidinha's] educational
rights and opportunities"; (3) "recklessly, negligently, and/or
deliberately failed to provide adequate supervision to the boys'
volleyball team"; and (4) "negligently inflicted serious and

lasting emotional distress." <u>Id.</u> ¶¶ 35-44.  Underlying
Plaintiffs pray for declaratory relief, general, special, and
punitive damages, and attorneys' fees and costs.

At all relevant times, Chun was the named insured under
a State Farm Homeowner's Policy, No. 51-BM-8769-8 ("Homeowner's
Policy"), and under a State Farm Personal Liability Umbrella
Policy, No. 51-21-2471-3 ("Umbrella Policy").  Ex. B (attached to
Motion) at 1; Ex. C (attached to Motion at 1).

The Homeowner's Policy provides in relevant part:

> If a claim is made or a suit is brought
> against an **insured** for damages because of
> **bodily injury** or **property damage** to which
> this coverage applies, caused by an
> **occurrence,** we will:
>
> 1.  pay up to our limit of liability
>     for the damages for which the
>     **insured** is legally liable; and
>
> 2.  provide a defense at our expense by
>     counsel of our choice.

Ex. A (attached to Motion) at 18.  The Policy expressly excludes
from coverage:  (1) **"bodily injury** or **property damage** arising out
of business pursuits of any **insured"** and (2) **"bodily injury** or
**property damage** arising out of the rendering or failing to render
professional services." <u>Id.</u> at 19.

The Umbrella Policy provides:  "If you are legally
obligated to pay damages for a **loss,** we will pay your **net loss**
minus the **retained limit."**  Ex. B (attached to Motion) at 6.  The

7

Policy also states:  "When the claim or suit is covered by this policy, but not covered by any other policy available to you . . . we will defend the suit against you."  Ex. B (attached to Motion) at 6.  The Umbrella Policy excludes from coverage: (1) "any loss caused by [the insured's] **business** pursuits," Ex. A (attached to Motion) at 37;[4] and (2) "any **loss** caused by providing or failing to provide a professional service."  Ex. B (attached to Motion) at 7.

IV.      ANALYSIS.

         A.    There Is No Coverage Under the Homeowner's Policy.

         Acknowledging that the Homeowner's Policy provides coverage only for "damages because of **bodily injury** or **property damage** to which this coverage applies," State Farm argues that there is no coverage under that Policy because the state court action does not allege bodily injury or property damage, as defined in the Policy.  Motion at 12.  State Farm specifically points out that the State Court Complaint fails to make any allegation of physical injury to a person or to tangible

---

[4] In its reply memorandum, State Farm explains that it inadvertently attached an endorsement, "FE 7786," to the wrong Policy.  Reply at 2 n.1.  State Farm clarifies that the FE 7786 endorsement applies to the Umbrella Policy (Ex. B (attached to Motion)), but was incorrectly attached to the Homeowner's Policy (Ex. A (attached to Motion)).  Id.; see also Ex. B (attached to Motion) at 1 (noting that the Umbrella Policy includes endorsement FE 7786).  The court therefore construes the FE 7786 endorsement as applying to the Umbrella Policy, not the Homeowner's Policy.

property.  Id. at 12-13.  The court agrees that the Homeowner's
Policy provides no coverage for the underlying claims against
Chun.

Under Hawaii law, general rules of contract
construction apply to the interpretation of insurance contracts.
Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d
38, 42 (Haw. 1994).  Insurance policies must be read as a whole
and construed in accordance with the plain meaning of its terms,
unless it appears that a different meaning is intended.  Id. at
121, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 66 Haw.
413, 423, 665 P.2d 648, 655 (Haw. 1983); see also Haw. Rev. Stat.
§ 431:10-237 ("Every insurance contract shall be construed
according to the entirety of its terms and conditions as set
forth in the policy.").  Because insurance contracts are
contracts of adhesion, they must be construed liberally in favor
of the insured, and any ambiguities must be resolved against the
insurer.  Put another way, the rule is that insurance policies
are construed in accordance with the reasonable expectations of a
layperson.  Dawes, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage
under an insurance policy.  See Sentinel Ins. Co. v. First Ins.
Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (Haw.
1994).  The insurer has the burden of establishing the
applicability of an exclusion.  See id. at 297, 875 P.2d at 914.

The obligation to defend an insured is broader than the duty to pay claims.  Id. at 287, 875 P.2d at 904.  The duty to defend "arises wherever there is the mere <u>potential</u> for coverage."  Id. (emphasis in original).  The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion."  <u>Dairy Road Partners v. Island Ins. Co.</u>, 92 Haw. 398, 413, 992 P.2d 93, 108 (Haw. 2000) (citation omitted).

Additionally, "Hawaii adheres to the 'complaint allegation rule.'"  <u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d 940, 944 (9th Cir. 2004) (citing <u>Pancakes of Hawaii, Inc. v. Pomare Props. Corp.</u>, 85 Haw. 286, 994 P.2d 83 (Haw. Ct. App. 1997)).  Under that rule,

> The focus is on the alleged claims and facts.
> The duty to defend "is limited to situations
> where the pleadings have alleged claims for
> relief which fall within the terms for
> coverage of the insurance contract.  'Where
> pleadings fail to allege any basis for
> recovery within the coverage clause, the
> insurer has no obligation to defend.'"

Id. at 944-45 (citing <u>Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.</u>, 76 Haw. 166, 872 P.2d 230 (Haw. 1994) ("<u>Hawaiian Holiday</u>")).

The Homeowner's Policy provides coverage for claims "brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies."  Ex. A

10

(attached to Motion) at 18.  State Farm asserts that the State

Court Complaint alleges no "bodily injury" or "property damage."

           1.  <u>Bodily Injury.</u>

        The Policy defines "bodily injury" as:

> physical injury, sickness, or disease to a
> person.  This includes required care, loss of
> services and death resulting therefrom.
>
> **Bodily injury** does not include:
>
> . . . .
>
> c.   emotional distress, mental anguish,
>      humiliation, mental distress,
>      mental injury, or any similar
>      injury unless it arises out of
>      actual physical injury to some
>      person.

Ex. A (attached to Motion) at 4.

        The State Court Complaint makes no allegation that

Underlying Plaintiffs suffered any physical injury, sickness, or

disease.  <u>See</u> State Court Complaint ¶¶ 31-44.  At most,

Underlying Plaintiffs say they suffered "emotional distress,

anxiety, worry, and anger."  State Court Complaint ¶¶ 33, 42.

Under the plain terms of the Homeowner's Policy, such injuries

are not covered "unless [they] arise[] out of actual physical

injury."  <u>See</u> Ex. A (attached to Motion).  Chun claims that,

because the State Court Complaint alleges "'serious and lasting

emotional distress,' . . . physical manifestations are not beyond

the scope of possibility."  Opp. at 16.  But Hawaii law makes

clear that the "focus is on the alleged claims and facts" in the

State Court Complaint.  See Burlington, 383 F.3d at 944.  Because Underlying Plaintiffs do not allege that they suffered any physical injury or that their "emotional distress, anxiety, worry, and anger" arise out of any physical injury, the State Court Complaint alleges no "bodily injury" under the Homeowner's Policy.  See Dawes, 77 Haw. at 121, 883 P.2d at 42.

2.   Property Damage.

"Property damage" is defined in the Homeowner's Policy as "physical damage to or destruction of tangible property, including loss of use of this property."  Ex. A (attached to Motion) at 5.  State Farm contends that the State Court Complaint does not allege any such property damage, and Chun does not oppose this argument.  The court agrees with State Farm.

The only damages allegedly suffered by Underlying Plaintiffs are:  (1) "loss of valuable educational and athletic opportunities," State Court Complaint ¶ 31; (2) "irreparable damages to their reputations," id. ¶ 32; (3) "emotional distress, anxiety, worry, and anger," id. ¶¶ 33, 42; and (4) "financial losses and expenses," id. ¶ 34.  None of these alleged injuries involves physical damage to, destruction of, or loss of use of tangible property.  The court therefore concludes that the State Court Complaint alleges no "property damage" under the Homeowner's Policy.  Because Underlying Plaintiffs allege no "bodily injury" or "property damage" in the State Court

12

Complaint, none of their injuries is covered by the Homeowner's Policy.  <u>See</u> Ex. A (attached to Motion) at 18.   The court therefore concludes that State Farm owes no duties to Chun under the Homeowner's Policy.  <u>See</u> <u>Sentinel</u>, 76 Haw. at 287, 875 P.2d at 904.

> B.   <u>There Is No Coverage Under the Umbrella Policy.</u>

The Umbrella Policy provides coverage over the state court action if Chun "is legally obligated to pay damages for a **loss.**"  Ex. B (attached to Motion) at 6.   State Farm argues that the Umbrella Policy provides no coverage because no "loss" occurred and, alternatively, the "business pursuits" exclusion applies.  Motion at 11-12, 15-19.   Chun disputes whether a "loss" occurred and whether the exclusion applies.  Opp. at 19-24.   The court concludes that the business pursuits exception precludes any coverage under the Umbrella Policy.

As stated above, the Umbrella Policy provides coverage for Chun if he is "legally obligated to pay damages for a **loss.**" Ex. B (attached to Motion) at 6.   The Policy defines "loss" as:

> an accident, including injurious exposure to conditions, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss** . . . .

Ex. A (attached to Motion) at 36.   "Bodily injury" is defined in the Umbrella Policy as "physical injury, sickness, disease, emotional distress or mental injury to a person."  <u>Id.</u>

1.   The Alleged Injuries Were Caused By a
     "Loss," or Accident.

Because the Umbrella Policy, unlike the Homeowner's
Policy, defines "bodily injury" as including "emotional distress
or mental injury to a person," State Farm concedes that the State
Court Complaint sufficiently alleges "bodily injuries," as
Underlying Plaintiffs say they suffered "emotional distress,
anxiety, worry, and anger."  See Reply at 2 n.1 ("State Farm
withdraws its argument that there is no 'bodily injury' within
the meaning of the [Umbrella Policy]").  Acknowledging that the
Policy covers only bodily injury that results from a "loss," or
"accident," the parties dispute whether the State Court Complaint
alleges that Underlying Plaintiffs' injuries resulted from an
"accident."  The court concludes that it does.

The Hawaii Supreme Court has previously addressed what
constitutes an "accident" in a line of cases concerning various
insurance policies.  In Hawaiian Insurance & Guaranty Co. v.
Blanco, 72 Haw. 9, 12, 804 P.2d 876, 878 (Haw. 1990), overruled
on other grounds by Dairy Rd. Partners, 92 Haw. at 422, 992 P.2d
at 117, the Hawaii Supreme Court was faced with an insurance
policy that defined "occurrence" as "an accident, including
exposure to conditions."  In that case, Saturnino Blanco
("Blanco") was injured when Ireneo Garcia ("Garcia") shot a rifle
in Blanco's direction.  Id. at 11, 804 P.2d at 877.  Blanco
brought a civil action against Garcia, asserting claims for the

14

willful, intentional, and/or negligent firing of a rifle at Blanco and for the negligent infliction of emotional distress on Blanco's wife, who witnessed the shooting.  Id. at 12, 804 P.2d at 878.  After an arbitrator awarded monetary damages against Garcia, Blanco demanded that Hawaiian Insurance and Guaranty Company, Ltd., ("HIG"), Garcia's homeowner's insurer, pay the award.  Id. at 12-15, 804 P.2d at 878-79.  HIG refused and brought a separate action seeking a declaration that it owed no duty to defend or indemnify Garcia.  Id. at 15, 804 P.2d at 879.

The trial court granted summary judgment to HIG.  Id. On appeal, the Hawaii Supreme Court noted that HIG owed duties under the insurance policy only if injury or damage resulted from an "occurrence."  Id. at 12, 804 P.2d at 878.  The court stated, "Given the best possible interpretation, Garcia fired the rifle in [Blanco's] direction intending to frighten him.  That physical injury might result from such an action is certainly something which a reasonable man in Garcia's position should have anticipated and expected."  Id. at 18, 804 P.2d at 881 (emphasis added).  Regarding the mental distress alleged by Blanco's wife, the court stated, "[I]t is clear that a reasonable man in Garcia's position, firing a rifle intentionally in the direction of a woman's husband, would anticipate, and hence expect, that that woman might suffer emotional injury and distress at witnessing the incident."  Id. at 19, 804 P.2d at 881 (emphasis

15

added).   The Hawaii Supreme Court affirmed the trial court's
ruling that HIG owed neither a duty to defend nor a duty to
indemnify Blanco or his wife.   Id.

The Hawaii Supreme Court in Blanco was tracking its
ruling in Hawaiian Ins. & Guar. Co. v. Brooks, 67 Haw. 285, 292,
686 P.2d 23, 24 (Haw. 1984), overruled on other grounds by Dairy
Rd. Partners, 92 Haw. at 422, 992 P.2d at 117.   In Brooks, Robert
Carroll ("Carroll") was driving a truck owned by Continental Auto
Repair, Inc., when he offered a ride to Christine Brooks
("Brooks").   Brooks got into the rear section of the truck, where
she was "assaulted, battered, and raped" by Isaac Bunker
("Bunker"), another passenger in the truck.   Id. at 292, 686 P.2d
at 25.   Brooks sued Carroll, Bunker, and Continental, and
Continental's insurer, HIG, defended Continental subject to a
reservation of rights.   See id. at 287, 686 P.2d at 25.

HIG also filed suit against Continental, Carroll,
Bunker, and Brooks, seeking a declaration that HIG owed no duties
under the insurance policy, which provided coverage for bodily
injury "caused by an occurrence."   Id. at 289, 686 P.2d at 26.
The policy defined "occurrence" as "an accident, including
continuous or repeated exposure to conditions."   Id.   The trial
court entered summary judgment in HIG's favor, and Brooks
appealed.   With respect to Bunker's actions, the Hawaii Supreme
Court stated that "the harm occasioned by his victim was hardly

16

unexpected or unintentional." Id. at 292, 686 P.2d at 28.
Regarding Carroll, the court noted that he "could see the
incident taking place in the back of the truck," but "chose not
to do anything to prevent or mitigate the harm suffered by the
victim." Id. Thus, the court concluded that "it was definitely
unreasonable for Carroll to think Continental's automobile
liability policy would protect him from liability to this
instance." Id. Seeing no potential for coverage, the Hawaii
Supreme Court identified no duty owed by HIG. Id.

In Hawaiian Holiday, 76 Haw. at 170, 872 P.2d at 234,
the Hawaii Supreme Court revisited its decisions in Blanco and
Brooks. Hawaiian Holiday involved claims that an insured had
"planted fewer trees than the parties had agreed to pursuant to
the contract, purposely planted ungrafted trees and immature
seedlings contrary to the contract, and planted the seedlings and
the grass simultaneously, again contrary to the contract." The
issue before the court was whether the alleged damage was caused
by an "occurrence," which the applicable insurance policy defined
as "an accident, including continuous or repeated exposure to
conditions." Id. at 234-35, 872 P.2d at 170-71. The court
relied on its prior decisions, stating, "The teaching of Blanco
and Brooks . . . is that, in order for the insurer to owe a duty
to defend or indemnify, the injury cannot be the expected or
reasonably foreseeable result of the insured's own intentional

17

acts or omissions." Id. at 170, 872 P.2d at 234. After noting that the plaintiffs' claims "did not sound in negligence," the court concluded that the insured's actions did not constitute an "occurrence" under the insurance policy. Id. at 171, 872 P.2d at 235.

In the State Court Complaint, Underlying Plaintiffs allege that Shelton and Vidinha appealed their dismissal to Chun. State Court Complaint ¶ 25. They further allege that Chun "denied [the] appeals under Kamehameha Schools' 'zero tolerance' policy." Id. ¶ 26. Based on Chun's denial of the appeals, Underlying Plaintiffs assert, among other things, that Chun negligently interfered with Shelton's and Vidinha's educational rights and opportunities and negligently inflicted Underlying Plaintiffs with emotional distress, anxiety, and worry. Id. ¶¶ 33, 38, 42.

Although the State Court Complaint expressly states that Chun acted negligently, State Farm argues, "The only acts alleged on the part of Dr. Chun in the complaint are the intentional and purposeful denial of Shelton's and Vidinha's appeals." Reply at 5 (emphases in original). However, on this summary judgment motion, the court must construe the allegations in the State Court Complaint in the light most favorable to Chun. See Mason v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) ("On summary judgment, we must draw all justifiable inferences in

18

favor of the nonmoving party."). In so doing, the court concludes that the State Court Complaint alleges claims that "sound in negligence such that a claim for [bodily injury], within the meaning of the [Umbrella Policy] could be supported." See Hawaiian Holiday, 76 Haw. at 171, 872 P.2d at 235. Underlying Plaintiffs' alleged bodily injuries were therefore at least potentially caused by a "loss," as defined in the Umbrella Policy. See id.; see also Blanco, 72 Haw. at 18-19, 804 P.2d at 881; Brooks, 67 Haw. at 292, 686 P.2d at 28.

　　　　　2.　　The Business Pursuits Exclusion Precludes Coverage.

The Umbrella Policy expressly excludes coverage "for any loss caused by [the insured's] **business** pursuits." Ex. B (attached to Motion) at 7; Ex. A (attached to Motion) at 37. The Policy defines "business" as "a trade, profession, or occupation." Ex. B (attached to Motion) at 4.

State Farm contends that the "business pursuits" exclusion applies to preclude any coverage under the Policy. Motion at 15-17. State Farm posits that, because "all of Chun's conduct which gives rise to the underlying complaint took place in the workplace setting, in response to a [Kamehameha Schools] student's behavior, and in furtherance of [Kamehameha Schools] disciplinary procedures, . . . the business act exclusions clearly apply to preclude coverage." Motion at 17. Chun counters that the exclusion does not apply because the court must

19

look beyond the allegations in the State Court Complaint, as he is sued in both his official and individual capacities.  Opp. at 18-24.  The court agrees with State Farm that the business pursuits exclusion precludes coverage under the Umbrella Policy.

In <u>Armed Forces Insurance Exchange v. Transamerica Insurance Co.</u>, 88 Haw. at 373, 381, 966 P.2d 1099, 1107 (Haw. Ct. App. 1998), the Hawaii Intermediate Court of Appeals held that a similar business pursuits exclusion precluded coverage under a homeowner's insurance policy.  In that case, Bernard Sagawa ("Sagawa"), an employee of the Hawaii Housing Authority ("HHA"), allegedly entered various homes "under the pretext of conducting a house inspection" and, while in the homes, sexually harassed and assaulted the occupants ("the occupants") and inflicted intentional and negligent emotional distress on them.  <u>Id.</u> at 375, 966 P.2d at 1101.  The occupants brought suit against Sagawa and the HHA for, among other things, negligence, civil rights violations, and invasion of privacy.  <u>Id.</u>  One of Sagawa's homeowner's insurance carriers was Transamerica Insurance Company ("TIG"), which sought a declaratory judgment that it owed no duties to Sagawa in light of the business pursuits exclusion in its policy.  <u>Id.</u> at 376, 966 P.2d at 1102.  The exclusion stated that coverage did not apply to injuries "arising out of business pursuits of an insured."  <u>Id.</u> at 375, 966 P.2d at 1101.  After

the trial court granted summary judgment in TIG's favor, the occupants appealed.  Id. at 377, 966 P.2d at 1103.

On appeal, the Hawaii Intermediate Court of Appeals stated, "[I]t has been generally agreed that the phrase 'business pursuits' as used in the homeowners' policies refers to activities which are conducted on a regular or continuous basis, for the purpose of earning income, profit, or as a means of livelihood." Id. at 379, 966 P.2d at 1105.  The court also noted the "two-part test for determining whether an activity constitutes a business pursuit," which requires that "both (1) a continuity or recurrent character of the activity, and (2) a profit motive must exist." Id. at 380, 966 P.2d at 1106.  The court also stated that "[w]hether an activity is a business pursuit is almost always a factual question presented for the determination by a court." Id.  In applying the test to the facts before it, the court held that "Sagawa's position with HHA constituted a 'business pursuit'" because:  (1) Sagawa "was employed with the HHA"; (2) his employment "was apparently recurrent and was for the purpose of earning income"; (3) he "was engaged in the conduct of his occupational duties at the time of the alleged acts"; and (4) he "was apparently only able to commit the complained-of acts because of the inspections performed as a part of his employment." Id. at 381, 966 P.2d at 1107.

In applying the two-part test to the facts alleged in the State Court Complaint, the court notes that:  (1) Chun was employed by Kamehameha Schools as the president and headmaster at all relevant times; (2) his employment was clearly recurrent and was for the purpose of earning income; (3) when he denied Shelton's and Vidinha's appeals, he was engaged in his occupational duties; and (4) he was only able to deny the appeals because of his employment at Kamehameha Schools.  Thus, as in Armed Forces, "it is evident that [Chun's] position with [Kamehameha Schools] constituted a 'business pursuit' within the terms of the" Umbrella Policy.  See Armed Forces, 88 Haw. at 381, 966 P.2d at 1107.

Chun asks the court to look beyond the allegations of the State Court Complaint to infer that the state court action involves "acts/omissions that allegedly took place outside of the work setting, outside of work hours, and unrelated to [Chun's] business duties."  Opp. at 23.  Chun argues that the court may look beyond the complaint when "the allegations of the complaint are ambiguous."  Id. at 22.  Chun maintains that, because he is sued in both his official and individual capacities, the "face of the [State Court Complaint] is ambiguous as to the specific factual allegations that would constitute a claim for individual liability against" him.  Id. at 22.  This argument lacks merit.

22

Chun is correct in stating that, when <u>investigating</u> whether claims against an insured are covered, an insurer "is required to look beyond the allegations of the complaint if . . . the allegations of the complaint are ambiguous or inadequate." <u>Bayudan v. Tradewind Ins. Co.</u>, 87 Haw. 379, 384, 972 P.2d 1061, 1066 (Haw. Ct. App. 1998). But the court is not now concerned with the insurer's investigation of whether the claims are covered.

More importantly, the claims in the State Court Complaint are not ambiguous at all. Clearly, all claims against Chun, regardless of whether they are asserted against him in his individual or official capacity, are based on his denial of Shelton's and Vidinha's appeal of their dismissal from Kamehameha Schools. This denial could only occur by virtue of Chun's authority as school president and headmaster. The reference to Chun's "individual" capacity is a reference to whether he must pay any damage award out of his personal funds, rather than out of school funds. A host of reasons may determine who pays any award, but those reasons do not necessarily govern the decision as to whether Chun's actions fall within the business pursuits exclusion. The State Court Complaint unambiguously charges Chun with taking action as a school official. This court will not look beyond the State Court Complaint for unasserted claims. <u>See</u> <u>Burlington</u>, 383 F.3d at 944 (noting that Hawaii courts adhere to

the complaint allegation rule, which requires courts to focus on the alleged claims and facts in the underlying complaint).

Based on the allegations set forth in the State Court Complaint, State Farm meets its burden of establishing that the business pursuits exception applies to preclude coverage under the Umbrella Policy.[5]   Sentinel, 76 Haw. at 297, 875 P.2d at 914. Accordingly, State Farm owes no duties under that Policy to defend or indemnify Chun.

V.      CONCLUSION.

In light of the foregoing, the court grants State Farm's motion for summary judgment.   Under the Policies' clear language, State Farm owes no duty under the Homeowner's Policy or the Umbrella Policy to defend or indemnify Chun in the state court action.   No claims remain for further adjudication, and the

---

[5] Because the court ultimately concludes that the business pursuits exception precludes any coverage under the Umbrella Policy, the court need not and does not address whether the State Court Complaint alleges "property damage" or "personal injury," as defined in that Policy, or whether the "professional services" exclusion also precludes coverage.

Clerk of Court is therefore directed to enter judgment in favor
of State Farm and to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 6, 2007.



_____
Susan Oki Mollway
United States District Judge


**State Farm Fire & Casualty Co. v. Chun**, Civ. No. 07-00156 SOM/LEK; ORDER
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.